REINHARDT, Circuit Judge,
dissenting.
This case presents a question of statutory interpretation of a section of California’s Song-Beverly Credit Card Act, a consumer protection statute intended to prevent merchants from demanding personal information from consumers as a condition of their ability to pay by credit card. Florez v. Linens ‘N Things, Inc., 108 Cal.App.4th 447, 452, 133 Cal.Rptr.2d 465 (2003). The California Legislature deemed that unless such information, which includes addresses, phone numbers, and ZIP codes, was necessary to complete the transaction, there was no legitimate purpose to its acquisition. Absher v. Auto-Zone, Inc., 164 Cal.App.4th 332, 345, 78 Cal.Rptr.3d 817 (2008). Accordingly, it enacted section 1747.08 of the California Civil Code, which prohibits the collection of personal information in connection with a credit card transaction, with some limited exceptions, including the exception at issue here: The prohibition does not apply *710 “[i]f the credit card is being used as a deposit to secure payment in the event of default, loss, damage, or other similar occurrence.” Cal. Civ.Code § 1747.08(c)(1).
As the majority states, we have no guidance from the California Supreme Court, the California appellate courts, courts in other jurisdictions, treatises, or restatements to help us interpret this exception specifically. We are guided, however, by the rule that “courts should liberally construe remedial statutes in favor of their protective purpose, which, in the case of section 1747.08, includes addressing the misuse of personal identification information for, inter alia, marketing purposes.” Pineda v. Williams-Sonoma Stores, Inc., 51 Cal.4th 524, 532, 120 Cal.Rptr.3d 531, 246 P.3d 612 (2011) (internal citations and quotation marks omitted).
The statute before us is remedial because its “overriding purpose” was to protect consumer privacy by preventing retailers from acquiring and using “additional personal information for their own business purposes—for example, to build mailing and telephone lists which they can subsequently use for their own in-house marketing efforts, or sell to direct-mail or tele-marketing specialists, or to others.” Id. at 534-35, 120 Cal.Rptr.3d 531, 246 P.3d 612 (internal citation and quotation marks omitted). A ZIP code is protected personal information because it is “both unnecessary to the transaction and can be used, together with the cardholder’s name, to locate his or her full address,” id. at 532, 120 Cal.Rptr.3d 531, 246 P.3d 612, for those very purposes. Plaintiffs have pleaded that Redbox uses the ZIP codes it collects not for fraud prevention, but for marketing purposes, precisely the type of conduct the Act was intended to prevent.
To allow merchants to obtain the personal information when essential to the transaction itself, the Legislature provided several narrow exceptions including the exception at issue here. Considering only the plain language of the statute, I accept, for the sake of argument, the majority’s claim that according to the dictionary definition of “deposit,” the credit card in these transactions can be understood to be “used as a deposit to secure payment.” Cal. Civ.Code § 1747.08(c)(1). I cannot agree, however, that even assuming the credit card is used as a deposit, the deposit is being used to secure that payment “in the event of default, loss, damage, or similar occurrence,” as required by the statutory exception. Id. Instead, in my view, the credit card is being used, as pleaded in the complaint, to secure the charges that constitute the primary agreement between the customer and Redbox, charges that are therefore unrelated to “default, loss, damage, or similar occurrence.”
In fact, under Redbox’s model as pleaded, there is no apparent way for a customer to incur charges on his credit card of record for default, loss, or damage.[1] “Typically, the per unit DVD rental price at a Redbox kiosk is a flat fee plus tax for one night and, if the consumer chooses to keep the DVD movie for additional nights, the consumer is charged for each additional night at the same flat fee per night.” As Redbox states in its brief, “some custom *711 ers do not return the DVD at all, whether because they lost it, damaged it, or simply decided to retain it for an extended period of time.... [T]he transaction functions as ... a deposit for the continued rental of the DVD until it is returned, or until the maximum rental fee is reached.” On the Redbox model, a customer who melts a DVD in his car pays the same amount as one who chooses to rent the DVD for 25 nights, or one who chooses to rent to own: all three customers are charged the maximum fee of $25.00, and no customer is charged more. Because of this model, a customer who destroys or loses a DVD causes no loss or damage to Redbox, and every payment secured by the credit card is part of the anticipated transaction.
The majority’s error stems from its mis-charaeterization of the Redbox transaction as a one-day rental followed by a series of penalties imposed if the customer fails to return the DVD after a single day. Instead, the Redbox customer is agreeing to rent the DVD at a fixed daily fee with a maximum total charge of $25.00 for 25 days of rental. The maximum charge also constitutes the purchase price, and when the customer has paid that amount he has acquired ownership of the DVD. The customer thus authorizes Redbox to use his credit card for future payments that are wholly different from “default, loss, [or] damage.” To say, as the majority does, that after the initial charge to the credit card, every additional charge, no matter its nature, is a charge for “default, loss, damage, or similar occurrence” is to stretch the exception well beyond its plain language and legislative intent.
Thus, even assuming that the majority is correct that the credit card transaction fits the definition of a deposit and meets that portion of the statutory requirement, affording the statute the liberal construction that favors its consumer protective purposes, it seems clear that Plaintiffs have met their burden of pleading that this statutory exception does not apply. G.H.I.I. v. MTS, Inc., 147 Cal.App.3d 256, 273, 195 Cal.Rptr. 211 (Ct.App.1983) (internal citation and quotation marks omitted) (“Where a party relies on a statute which contains a limitation in the clause creating and defining the liability, as here, such limitation must be negatived in the complaint”). Plaintiffs have pleaded facts that, if true, place the transaction outside the exception’s plain terms and establish that Redbox uses the ZIP codes for marketing purposes. I therefore disagree that the district court’s decision can be affirmed on this basis.
The majority does not rely for its holding on the basis on which the district court dismissed the action, namely, that the Song-Beverly Act does not apply to Red-box kiosk transactions. The majority avoids this issue for good reason, as I would reverse the dismissal of the action on that ground as well. Redbox kiosk transactions are more similar to pay-at-the-pump transactions, covered by the Act, than to online transactions, which are not covered. See Apple, Inc. v. Superior Court, 56 Cal.4th 128, 144, 151 Cal.Rptr.3d 841, 292 P.3d 883 (Cal.2013). Nor does the majority rely on another statutory exception, which allows for the collection of personal information when that information “is required for a special purpose incidental but related to the individual credit card transaction.” Cal Civ.Code § 1747.08(b)(4). This exception cannot be the basis for dismissing the action because Plaintiffs pleaded that Redbox’s sole purpose in obtaining the ZIP code is marketing, rendering the purpose unrelated to the credit card transaction.
I would reverse. Accordingly I dissent.

. The only way for a customer to default would be to pay the initial fee with a credit card that expired or was cancelled before the final charges were placed on it. In such cases, Redbox "reserve[s] the right to charge ... interest for overdue charges at the then-highest current rate allowable on Illinois contracts” and the right to seek collection and attorney’s fees. If the information from a second credit card were retained for this purpose, it would likely fall within the deposit exception. However, so long as the first credit card is valid, it will never be so used.