Filed 5/4/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MICHAEL AMBERS, | B257487 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC506482) |
| v. | |
| BEVERAGES & MORE, INC., | |
| Defendant and Respondent. | |

      APPEAL from a judgment of the Superior Court of Los Angeles County. Jane L. Johnson, Judge. Affirmed.


      Schreiber & Schreiber, Edwin C. Schreiber, Eric A. Schreiber, and Ean M. Schreiber for Plaintiff and Appellant.


      Cooley LLP, Michelle C. Doolin, Darcie A. Tilly, and Phillip M. Hoos for Defendant and Respondent.

The question presented in this appeal is whether Civil Code section 1747.08[1] of the Song-Beverly Credit Card Act (the Credit Card Act) (§ 1747 et seq.) applies to an online purchase of merchandise that the buyer elects to pick up at the seller's retail store. We conclude that the statute does not apply to that transaction under the circumstances presented here. We therefore affirm the judgment entered in the seller's favor.

## BACKGROUND

Plaintiff Michael Ambers (plaintiff) filed an unverified class action complaint against defendant Beverages & More, Inc. (BevMo) seeking civil penalties for violation of section 1747.08, which prohibits merchants from requesting or requiring and recording a consumer's personal identifying information (PII), such as an address and telephone number, during the course of a credit card purchase transaction. In his initial complaint, plaintiff alleged that he purchased alcohol online through BevMo's website and elected to pick up his order at a BevMo store. Plaintiff further alleged that providing his PII was a condition to completing the online purchase, that he provided BevMo with the required information, and that he "completed the transaction, paying for the MERCHANDISE with his credit card." Sometime thereafter, plaintiff went to a BevMo store, showed his identification and the credit card used to make the online purchase to a BevMo employee, and received his merchandise.

BevMo demurred to the complaint, arguing that under *Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128 (*Apple*), section 1747.08 did not apply to an online purchase transaction in which PII is the only means to prevent fraud during the purchase. BevMo argued that plaintiff had alleged that his purchase was completed online, and that BevMo had no other means to prevent fraud in the transaction except by requesting PII. BevMo further argued that its PII request came within the exception set forth in subdivision (c)(4) of section 1747.08.

The trial court sustained the demurrer, concluding that section 1747.08 applied to the online purchase, and not the in-store pickup of merchandise. The court granted

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

2

plaintiff leave to amend, but advised plaintiff that the amended pleading would have to explain the allegation in the initial complaint that plaintiff had "completed the transaction" online.

Plaintiff filed a first amended complaint, the operative pleading in this appeal, in which he alleged that BevMo's online request for his PII violated section 1747.08 because that information was "unnecessary to the completion of his store pick up transaction" or to prevent fraud because he was required to show the store employee his photo identification and credit card before receiving his merchandise. Plaintiff further alleged the transaction was not completed until he went to the BevMo store, showed the clerk both his photo identification and credit card, and physically received his merchandise. Plaintiff argued that the purchase could not have been completed until he took physical possession of the merchandise because (1) the merchandise was personal property to which a customer could not take title before physical possession; (2) a customer who failed to pick up merchandise after placing an online order would have his or her credit card re-credited with the purchase price; and (3) section 1747.04 prohibits the retailer from claiming that title to goods has passed when it in fact has not.

BevMo again demurred, arguing that plaintiff was bound by his prior admission that his purchase transaction was completed online because he failed to explain why the previous allegation was erroneous. BevMo further argued that under the terms and conditions of its website, the parties had agreed that title to merchandise purchased online transfers to the buyer at the time of purchase, and not when the buyer takes physical possession. BevMo asked the trial court to take judicial notice of BevMo's web site terms and conditions of use. Finally, BevMo argued that the transaction was exempt under section 1747.08, subdivision (c)(4).

The trial court sustained the demurrer, after finding that plaintiff had failed, despite the court's instruction to do so, to explain why he was not bound by his previous allegation that the transaction was completed during the online purchase. The court took judicial notice of the terms and conditions of use posted on BevMo's website, which provide in relevant part: "When your order is approved by your credit card company,

3

you own the goods." The trial court concluded that "[b]ased on the facts alleged in the complaint, the applicable law and the facts judicially noted, under Commercial Code [section] 2401, then, Plaintiff owned the merchandise after he made his online payment." The court ruled that plaintiff failed to state a claim because, under *Apple*, BevMo could collect PII without violating section 1747.08. The trial court concluded that the terms and conditions of BevMo's website "clearly implicates" the exception set forth in subdivision (c)(4) of section 1747.08 to the statutory prohibition against collecting PII, and that plaintiff failed to explain why that exception did not apply. Finally, the trial court found that plaintiff had failed to allege any facts showing that the amended complaint could be further amended to state a cause of action and sustained the demurrer without leave to amend.

This appeal followed.

## DISCUSSION

### I. Standard of review

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.) The legal sufficiency of the complaint is reviewed de novo. (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790.)

4

## II. Applicability of section 1747.08

### A. *The statutory language*

Section 1747.08, subdivision (a) provides: "Except as provided in subdivision (c), no person, firm, partnership, association, or corporation that accepts credit cards for the transaction of business shall do any of the following: [¶] (1) Request, or require as a condition to accepting the credit card as payment in full or in part for goods or services, the cardholder to write any personal identification information upon the credit card transaction form or otherwise. [¶] (2) Request, or require as a condition to accepting the credit card as payment in full or in part for goods or services, the cardholder to provide personal identification information, which the person, firm, partnership, association, or corporation accepting the credit card writes, causes to be written, or otherwise records upon the credit card transaction form or otherwise. [¶] (3) Utilize, in any credit card transaction, a credit card form which contains preprinted spaces specifically designated for filling in any personal identification information of the cardholder."

"Personal identification information" is defined in section 1747.08, subdivision (b), as "information concerning the cardholder, other than information set forth on the credit card, and including, but not limited to, the cardholder's address and telephone number."

Section 1747.08, subdivision (c), sets forth certain exceptions to the statutory prohibitions. As relevant here, subdivision (c)(4) allows PII to be collected if it "is required for a special purpose incidental but related to the individual credit card transaction, including, but not limited to, information relating to shipping, delivery, servicing, or installation of the purchased merchandise, or for special orders."

### B. *Apple case*

Section 1747.08 makes no reference to credit card transactions conducted via the internet. Its application to online transactions was addressed by the California Supreme Court in *Apple*, a case that involved a credit card purchase of an electronic download via the internet.

Given the absence of statutory language regarding online transactions, the Supreme Court in *Apple* examined the legislative history of the Credit Card Act, noting that the court had previously concluded in *Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, that "[t]he statute's overriding purpose was to 'protect the personal privacy of consumers who pay for transactions with credit cards'" by prohibiting businesses from "'requiring information that merchants, banks or credit card companies do not require or need.'" (*Id.* at p. 534, quoting Assem. Com. On Finance and Ins., Analysis of Assem. Bill No. 2920 (1989-1990 Reg. Sess.) as amended Mar. 19 1990, p. 2.)

The court in *Apple* then observed that while consumer privacy protection was a primary purpose of the Credit Card Act, the legislative history also reflected an effort to balance that purpose against the need to protect both consumers and retailers from the risk of fraud. The court found that "[t]he legislative history shows that the Legislature enacted the statute's prohibitions only after carefully considering and rejecting the possibility that the collection of personal identification information by brick-and-mortar retailers could serve a legitimate purpose such as fraud prevention." (*Apple, supra*, 56 Cal.4th at p. 139.) The Legislature considered the standard procedures followed by retailers in the 1990's, which included "'verify[ing] the identification of the cardholder by comparing the signature on the credit card transaction form with the signature on the back of the card' and 'contact[ing] the credit card issuer's authorization center to obtain approval' for sales about a specified 'floor limit' -- and concluded that collection of personal identification information was not a necessary part of such procedure. [Citation.]" (*Apple, supra*, at p. 139, citing Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2920 (1989-1990 Reg. Sess.) as amended June 27, 1990, p. 3.) The Supreme Court noted that the Legislature might not have reached the same conclusion with regard to online credit card transactions in which the standard procedures for verifying a cardholder's identity are not available. (*Apple*, at p. 140.)

The high court found further evidence of the Legislature's effort to balance consumer privacy against the risk of credit card fraud in the 1991 enactment of what is

now subdivision (d) of section 1747.08 (former section 1747.8, subd. (d)). Subdivision (d) allows businesses to require customers making credit card purchases to provide identification so long as none of the information contained therein is recorded. It also allows businesses to record a customer's driver's license or state identification number if the customer pays for the transaction with a credit card number but does not make the credit card available upon request to verify the number.[2] The court concluded that section 1747.08, subdivision (d) "demonstrates the Legislature's intent to permit retailers to use and even record personal identification information when necessary to combat fraud and identity theft -- objectives that not only protect retailers but also promote consumer privacy." (*Apple, supra*, 56 Cal.4th at p. 140. )

The Supreme Court then noted that "[t]he safeguards against fraud that are provided in section 1747.08(d) are not available to an online retailer selling an electronically downloadable product. Unlike a brick-and-mortar retailer, an online retailer cannot visually inspect the credit card, the signature on the back of the card, or the customer's photo identification. Thus, section 1747.08(d) -- the key antifraud mechanism in the statutory scheme -- has no practical application to online transactions involving electronically downloadable products. We cannot conclude that if the Legislature in 1990 had been prescient enough to anticipate online transactions involving electronically downloadable products, it would have intended section 1747.08(a)'s prohibitions to apply to such transactions despite the unavailability of section 1747.08(d)'s safeguards." (*Apple, supra*, 56 Cal.4th at pp. 140-141.)

---

[2]  Subdivision (d) of section 1747.08 provides: "This section does not prohibit any person, firm, partnership, association, or corporation from requiring the cardholder, as a condition to accepting the credit card as payment in full or in part for goods or services, to provide reasonable forms of positive identification, which may include a driver's license or a California state identification card, or where one of these is not available, another form of photo identification, provided that none of the information contained thereon is written or recorded on the credit card transaction form or otherwise. If the cardholder pays for the transaction with a credit card number and does not make the credit card available upon request to verify the number, the cardholder's driver's license number or identification card number may be recorded on the credit card transaction form or otherwise."

The court in *Apple* found further support for the conclusion that such online transactions fall outside the scope of section 1747.08 in the Legislature's 2003 enactment of the California Online Privacy Protection Act, showing "when the Legislature intends to address online transactions, it does so unambiguously." (*Apple, supra*, 46 Cal.4th at p. 148.)

The Supreme Court concluded that "[b]ecause the statutory scheme provides no means for online retailers selling electronically downloadable products to protect against credit card fraud, . . . the Legislature could not have intended section 1747.08 to apply to this type of transaction." (*Apple, supra*, 56 Cal.4th at p. 143.) The court then delimited the scope of its holding to online purchases of electronically downloadable products: "We have no occasion here to decide whether section 1747.08 applies to online transactions that do not involve electronically downloadable products or to any other transactions that do not involve in-person, face-to-face interaction between the customer and retailer." (*Apple*, at p. 143.)

### C. Section 1747.08 does not apply to plaintiff's online transaction

Given the Supreme Court's express limitation of its holding in *Apple* to online credit card purchases of electronically downloadable products, *Apple* is not controlling authority as to whether section 1747.08 applies to the transaction at issue here. The court's reasoning and analysis in *Apple*, however, apply here with equal force.

Like the online retailer in *Apple*, BevMo had no means, without obtaining plaintiff's PII, of verifying that plaintiff was an authorized user of the credit card number entered on BevMo's website before the purchase transaction was completed. Such verification was necessary in *Apple* because upon completion of the online transaction, the buyer acquired the right to immediately download and begin using the purchased media items. Such verification was also necessary in the instant case because ownership of the merchandise purchased on BevMo's website passed immediately to plaintiff upon completion of the online transaction, when plaintiff's credit card was charged.

Plaintiff disputes that his purchase transaction was completed online, and argues that the transaction was not completed until he took physical possession of the

8

merchandise. He is bound, however, by the allegation in his initial complaint that the transaction was completed online when he paid for the merchandise with his credit card. (*Blain v. Doctor's Co.* (1990) 222 Cal.App.3d 1048, 1058.) Plaintiff's attempt to disavow that initial factual allegation by arguing that it was simply a change in legal theory is unavailing. When the purchase transaction was completed is a factual occurrence, not a legal theory. (See, e.g., *Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 702 [noting that whether a transaction was completed was an issue of fact].)

Plaintiff's argument that his purchase transaction was incomplete, as a matter of law, under Commercial Code section 2401, subdivision (2) is equally unavailing. The plain language of that statute contradicts plaintiff's position. Commercial Code section 2401, subdivision (2) states in relevant part: "*Unless otherwise explicitly agreed* title passes to the buyer at the time and place at which the seller completes his performance with respect to the physical delivery of the goods." (Italics added.) When making his online purchase through BevMo's website, plaintiff agreed to the website terms and conditions of use which state that title to purchased merchandise is transferred to the buyer at the time his or her credit card is charged.[3]

Plaintiff claims that BevMo's requirement that he present proof of his identity and the credit card used to complete the online purchase as a condition to receiving the purchased merchandise at a BevMo retail store was sufficient antifraud protection, rendering unnecessary any recordation of his PII at the time of purchase. He argues that section 1747.08 should therefore apply to prohibit BevMo from doing so. Plaintiff's argument overlooks the fact that he became the owner of the purchased items when his credit card was charged upon completion of the online transaction. Had the transaction been a fraudulent one, BevMo would have no recourse except to unwind the transaction and reclaim title to the fraudulently purchased merchandise. The availability of such an

---

[3]     We granted BevMo's request for judicial notice of its website terms and conditions of use.

9

ex post facto remedy is not the same as the antifraud protection provided by section 1747.08, subdivision (d) to a brick and mortar retail sale.[4] Applying the Supreme Court's reasoning in *Apple*, we cannot conclude that had the Legislature anticipated online sales transactions when enacting the Credit Card Act, it would have applied the prohibitions imposed by section 1747.08, subdivision (a) to online sales transactions despite the unavailability of the safeguards afforded by subdivision (d) -- "the key antifraud mechanism in the statutory scheme." (*Apple, supra*, 56 Cal.4th at p. 141.)

For the foregoing reasons, we conclude section 1747.08, subdivision (a) does not apply to plaintiff's online purchase of merchandise that plaintiff subsequently retrieved at a BevMo retail store.[5]

## DISPOSITION

The judgment is affirmed. BevMo is awarded its costs on appeal.

**CERTIFIED FOR PUBLICATION**



_____, J.
CHAVEZ

We concur:


_____, P. J.          _____, J.
BOREN                                         HOFFSTADT

---

[4] Before oral argument, BevMo's counsel informed the court of two recent cases involving the Credit Card Act, *Lewis v. Jinon Corp.* (2015) 232 Cal.App.4th 1369 and *Lewis v. Safeway, Inc.* (2015) 235 Cal.App.4th 385. The appellate courts in both cases held that a merchant did not violate the Credit Card Act by recording the birth date of a customer who purchased alcohol at the merchant's brick and mortar retail store. Both cases are inapposite, because neither involved an online credit card purchase.

[5] In view of our holding, we need not address the parties' arguments as to whether BevMo's PII request comes within the exception provided by subdivision (c)(4) of section 1747.08.