TURNER, P. J.,
Dissenting.
I. INTRODUCTION
I respectfully dissent from the order upholding the dismissal of counts 2 and 3 of the misdemeanor complaint. In my view, the plain language of Penal Code[1] section 991, subdivision (d) does not permit the dismissal of individual counts. Language permitting the dismissal of individual counts appears nowhere in section 991. But if the language of section 991 is ambiguous and resort to extraneous documents is proper, there is no evidence the Legislature intended that individual counts be dismissed. Some of the language in legislative documents is incorrect or irrelevant. But the other legislative evidence is solely consistent with the view of then Governor Edmund Brown, Jr., as to why section 991 was enacted. Governor Brown believed the purpose of section 991 was to implement the due process right of an in-custody misdemeanor defendant to a pretrial probable cause determination. *393 (Gerstein v. Pugh (1975) 420 U.S. 103, 111-119 [43 L.Ed.2d 54, 95 S.Ct. 854] (Gerstein); In re Walters (1975) 15 Cal.3d 738, 747-754 [126 Cal.Rptr. 239, 543 P2d 607] (Walters).) So do I.
II. STANDARDS OF REVIEW
Because this case involves an issue of a statutory interpretation applied to undisputed facts, we exercise independent review. (Burden v. Snowden (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P2d 672]; Kennedy v. Kennedy (2015) 235 Cal.App.4th 1474, 1480 [186 Cal.Rptr.3d. 198].) Our Supreme Court has explained: “When construing a statute, we look first to its words, ‘ “because they generally provide the most reliable indicator of legislative intent.” [Citation.] We give the words their usual and ordinary meaning [citation], while construing them in light of the statute as a whole and the statute’s purpose [citation].’ (Pineda v. Williams-Sonoma Stores, Inc. (2011) 51 Cal.4th 524, 529-530 [120 Cal.Rptr.3d 531, 246 P.3d 612].)” (In re Ethan C. (2012) 54 Cal.4th 610, 627 [143 Cal.Rptr.3d 565, 279 P3d 1052]; see Hsu v. Abbara (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804].) According to our Supreme Court: “ ‘If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.’ [Citation.] ‘Only when the statute’s language is ambiguous or susceptible of more than one reasonable interpretation, may the court turn to extrinsic aids to assist in interpretation.’ [Citation.]” (Pineda v. Williams-Sonoma Stores, Inc., supra, 51 Cal.4th at p. 530; see In re Ethan C., supra, 54 Cal.4th at p. 627.) As I will explain, this is the controlling rule of interpretative law.
In any event, if (but only if) the statutory language is ambiguous, then it is appropriate to review extraneous historical materials which assist in determining what the Legislature intended. Our Supreme Court has explained the nature of such evidence that may be reviewed: “If the statutory language is susceptible of more than one reasonable interpretation, we must look to additional canons of statutory construction to determine the Legislature’s purpose. (Olson v. Automobile Club of Southern California [(2008)] 42 Cal.4th [1142,] 1147 [74 Cal.Rptr.3d 81, 179 P.3d 882].) ‘Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.’ (Dyna-Med, Inc. v. Fair Employment & Housing Com. [(1987)] 43 Cal.3d [1379,] 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)” (McCarther v. Pacific Telesis Group (2010) 48 Cal.4th 104, 110 [105 Cal.Rptr.3d 404, 225 P.3d 538].) In my view, the weight of the historical materials is that individual counts, as distinguished from the complaint’s entirety, may not be dismissed. (§ 991, subd. (d) [“dismiss the complaint.”].)
*394 III. PLAIN LANGUAGE ANALYSIS
In my view, the plain language of section 991 is controlling without reference to any legislative intent materials. Nothing in the language of section 991 allows for the dismissal of individual counts. I agree with the following analysis in the appellate division opinion: “Section 991 expressly refers to the dismissal of the complaint: ‘If the court determines that no such probable cause exists, it shall dismiss the complaint and discharge the defendant.’ (§ 991, subd. (d), italics added.) The statute further provides for the refiling of a complaint after a motion to dismiss is granted under section 991: ‘Within 15 days of the dismissal of a complaint pursuant to this section the prosecution may refile the complaint.’ (§ 991, subd. (e), italics added.) There is no language authorizing either the dismissal of charges independent of the complaint, or the refiling of a charge that was previously dismissed from a complaint that otherwise survived a section 991 motion. The statute consistently references ‘the complaint,’ not independent charges within the complaint.” This analysis is controlling and dispenses with the need to review legislative intent materials. (Pineda v. Williams-Sonoma Stores, Inc., supra, 51 Cal.4th at p. 530; see In re Ethan C., supra, 54 Cal.4th at p. 627.)
IV. STATUTORY CONSTRUCTION ANALYSIS
A. Introduction
In my view, the weight of the evidence demonstrates that the Legislature did not intend to provide for the dismissal of individual counts without dismissing the entire complaint. Further, unlike the parties, I believe some of the language in one Senate caucus report and in every version of the Legislative Counsel’s Digest is just plain wrong. Those errors are irrelevant though in terms of the issue before us. When the totality of the evidence on the subject is assessed, I conclude the Legislature never intended to permit dismissal of individual counts without dismissal of the entire complaint. No committee report, analysis or letter by an interested party directly or inferentially states the language in section 991, subdivision (d) (“dismiss the complaint”) permits dismissal of individual counts.
B. Incorrect Analysis
The legislative intent materials contain an inaccuracy. Every version of the Legislative Counsel’s Digest for Assembly Bill No. 2931 (1979-1980 Reg. Sess.) (Assembly Bill No. 2931) contains the following incorrect analysis: “Existing law authorizes the magistrate in misdemeanor cases to ascertain the gravity of the offense committed, in case the defendant may be held to answer for a higher offense. Existing law does not specifically provide for a *395 determination in misdemeanor cases, prior to the filing of an information, of whether there is probable cause to believe that a public offense has been committed and that the defendant is guilty thereof. [¶] This bill would provide procedures for such a determination that the magistrate at the time of arraignment . . . .” (Legis. Counsel’s Dig., Assem. Bill No. 2931, Mar. 6, 1980; Legis. Counsel’s Dig., Assem. Bill No. 2931, as amended in Assem. May 7, 1980; Legis. Counsel’s Dig., Assem. Bill No. 2931 (1979-1980 Reg. Sess.) 4 Stats. 1980, Summary Dig., p. 470.) As can be noted, the Legislative Counsel’s Digest conflates the use of an information, which applies only in felony cases, to misdemeanor litigation. This is extraordinarily unusual because information provided in Legislative Counsel’s Office reports typically correctly discusses matters of criminal procedure. In my more than a quarter century with the Court of Appeal, I have never seen an error of this magnitude in any Legislative Counsel’s Office report or digest. Such is a testament to that office’s historic integrity and competence. The same erroneous analysis appears in a report prepared by the Sen. Democratic Caucus in connection with Assembly Bill No. 2931 as amended July 9, 1980. (Rep. prepared for Sen. Democratic Caucus on Assem. Bill No. 2931, as amended July 9, 1980, July 10, 1980, p. 1.)
C. Evidence Consistent with the Analysis That Section 991 Provides a Trial Court with the Authority to Dismiss a Complaint but Not Individual Counts
1. The decisional authority concerning the custody of misdemeanor defendants preceding introduction of Assembly Bill No. 2931
Two decisions preceded and motivated the introduction of Assembly Bill No. 2931. The first decision was Gerstein, supra, 420 U.S. at pages 106-125, a federal civil rights action which discusses the extent of Fourth Amendment rights of detained arrestees. Gerstein held, “[W]e hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest.” (Gerstein, at p. 114; see Michigan v. Doran (1978) 439 U.S. 282, 285, fn. 3 [58 L.Ed.2d 521, 99 S.Ct. 530].) Gerstein further held: “[A state] must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest.” (Gerstein, at p. 125, fn. omitted; see Baker v. McCollan (1979) 443 U.S. 137, 142-143 [61 L.Ed.2d 433, 99 S.Ct. 2689].) Gerstein allowed the states flexibility and the option of experimenting in devising post-arrest probable cause determination hearing procedures. (Gerstein, at p. 123; see County of Riverside v. McLaughlin (1991) 500 U.S. 44, 54 [114 L.Ed.2d 49, 111 S.Ct. 1661].)
*396 The second decision was Walters, supra, 15 Cal.3d at pages 747-753. In Walters, our Supreme Court evaluated this state’s misdemeanor pretrial procedures for compliance with the Gerstein probable cause determination requirements. Our Supreme Court held, “In light of the recent United States Supreme Court decision in Gerstein, we agree with petitioner and hold that a judicial determination of probable cause to hold an arrestee for trial on a misdemeanor charge must be made if the arrestee requests that determination, unless pending trial he is released on his own recognizance.” (Walters, supra, 15 Cal.3d at pp. 742-743, fn. omitted; see In re Golden (1977) 65 Cal.App.3d 789, 795 [135 Cal.Rptr. 512].) Walters described the issue decided in Gerstein: “If the judicial officer finds that probable cause has not been established, the defendant must be discharged from custody. However, prosecution of the offense is not precluded thereafter since additional evidence may be obtained by the time of trial. In any event, an unlawful arrest is not a bar to trial. (See People v. Bradford (1969) 70 Cal.2d 333, 344-345 [74 Cal.Rptr. 726, 450 P.2d 46].) Gerstein is concerned only with probable cause for pretrial detention and does not purport to hold that the absence of probable cause for detention bars further prosecution of the case. (Gerstein[, supra, 420 U.S. at pp.] 124-125, fn. 26 . . . .)” (Walters, supra, 15 Cal.3d at p. 753.) As will be noted, legislative committee and other documents explain that the purpose of Assembly Bill No. 2931 was to codify Walters. (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 2931, as amended May 7, 1980 [“The purpose of this bill is to create a means for eliminating groundless misdemeanor complaints before a case goes to trial and to codify In re Walters.”]; Governor Edmund G. Brown, Jr., Letter to Assemblymembers on Assem. Bill No. 2931, as enacted [“[T]he bill also contains an unrelated provision which attempts to codify the courts’ ruling in In re Walters[, supra, ]15 Cal.3d 738.”].)
2. Legislative history documents
When originally introduced, Assem. Bill No. 2931 applied to misdemeanor defendants even if they were out of custody. (Assem. Bill No. 2931, as introduced Mar. 6, 1980.) On April 10, 1980, prior to the scheduled Assembly Committee on Criminal Justice hearing, Steve White of the California District Attorneys Association wrote to Assemblymember Elihu Harris. (Assemblymember Harris was the author of Assem. Bill No. 2931.) Mr. White explained that “current decisional law,” in obvious reference to Gerstein and Walters, required a probable cause determination only in the case of detained defendants. (Steve White, Cal. District Attorneys Assn., letter to Assemblymember Harris concerning Assem. Bill No. 2931, as introduced, Apr. 10, 1980, p. 1.) After the initial hearing before the criminal justice committee, Assembly Bill No. 2931 was amended to apply only to detained misdemeanor defendants. In his April 10, 1980 letter, Mr. White never expressed any belief *397 about individual counts being dismissed if Assembly Bill No. 2931 was enacted. (As will be noted, neither did any other person who wrote the Legislature.)
Two reports prepared for an April 28*, 1980 hearing before the Assembly Committee on Criminal Justice describe how Assembly Bill No. 2931 established a procedure for determining probable cause in misdemeanor cases. At the conclusion of the description of the bill, both committee reports state, utilizing the same language: “4. If the court determines that there is probable cause to believe that the defendant committed the misdemeanor it shall set the matter for trial. [¶] 5. If the court determines that there is no probable cause it shall dismiss the complaint.” (Assem. Com. on Criminal Justice (Assem. Bill No. 2931 as introduced) Apr. 28, 1980, p. 1; Assem. Com. on Criminal Justice (Assem. Bill No. 2931 as introduced) Apr. 21, 1980, p. 1, italics added.)
In a similar vein, the Assembly third reading report states: “This bill establishes a procedure for determining probable cause in misdemeanor cases where the defendant is in custody at the time he or she appears before the magistrate for arraignment and upon motion of counsel. Specifically, the bill: [¶] 1) Requires the court to determine the probable cause issue immediately, or for good cause continue the hearing for up to three days; [¶] 2) Requires the court, in determining probable cause, to consider any warrant or supportive affidavits, the sworn complaint or other documents of similar reliability; and [¶] 3) Requires the court to set the matter for trial if probable cause exits, or else dismiss the complaint.” (Assem. Off. of Research, 3d reading rep. (Assem. Bill No. 2931, as amended May 7, 1980) May 12, 1980, p. 1, italics added.)
In preparation for final Assembly action, James Tucker, the lobbyist for the American Civil Liberties Union, California Legislative Office, prepared a floor statement for use by Assemblymember Harris. (James Tucker mem. to Assemblymember Elihu Harris regarding Assem. Bill No. 2931, May 14, 1980 (hereafter Tucker memorandum).) To begin with, Mr. Tucker explained that Assembly Bill No. 2931 was a codification of the Walters decision: “[Assembly Bill No. 2931] is merely a codification of a 1975 Supreme Court decision by Mr. Chief Justice Wright (In re Walters) which held that where a person is arrested on a misdemeanor charge and he is in custody at the time of his arraignment he is entitled to have the judge review the facts of the complaint to determine if there is probable cause to believe an offense was committed by the defendant. If the court finds that there is no probable cause then the judge must release the defendant pending a trial or other hearing on the case.” (Tucker mem., p. 1.) Mr. Tucker explained that Assembly Bill *398 No. 2931 clarified the Walters decision by specifying the types of evidence the trial court may consider in making a probable cause determination. (Tucker mem., p. 1.)
At another point, the Tucker memorandum states: “The other aspect of the bill ... is that it permits the court to dismiss the case if it determines that there is no probable cause, but it permits the prosecutor to refile the case a second time if he disagrees with the action of the court or he is able to come up with additional evidence. Thus, the bill fully protects the ability of the prosecutor to prosecute legitimate cases while still permitting the court to screen out those cases for which there is clearly no evidence to support the charge. This will help the Municipal Courts eliminate those cases from its calendar which should not be in the court system.” (Tucker mem., p. 2.) Nothing in Tucker’s memorandum describing Assembly Bill No. 2931 and the Walters decision prepared for Assemblymember Harris’s use on the Assembly floor refers to the dismissal of individual counts.
Once it passed the lower house, Assembly Bill No. 2931 was referred to the Senate Committee on Judiciary on May 21, 1980. (Assem. Final History, Assem. Bill No. 2931, p. 1684.) The Senate Judiciary Committee hearing on Assembly Bill No. 2931 was completed on July 8, 1980. (Ibid.) The report prepared for the Senate Judiciary Committee hearing concluded on July 8, 1980, specifies as the key issue, “SHOULD THERE BE A PROCEDURE FOR DETERMINING PROBABLE CAUSE IN MISDEMEANOR CASES AS PRESCRIBED BY THE U.S. AND CALIFORNIA SUPREME COURTS?” (Sen. Com. on Judiciary, supra, at p. 1.) The Senate Judiciary Committee report identifies as the purpose of Assembly Bill No. 2931: “Under existing law a person accused of a felony has a right to a hearing in order to determine whether probable cause exists to believe that she or he has committed the offense. However, existing law contains no provision for such a hearing when a person has been charged with a misdemeanor, though a judicial determination of probable cause when the defendant in custody was required by the U.S. Supreme Court in Gerstein v. Pugh (1975) and the California Supreme Court in In re Walters (1975). [¶] This bill would establish a procedure for determining probable cause in misdemeanor cases where the defendant is in custody and would provide that two dismissals for lack of probable cause is a bar to further prosecution. [¶] The purpose of this bill is to create a means for eliminating groundless misdemeanor complaints before a case goes to trial and to codify In re Walters.” (Sen. Com. on Judiciary, supra, at pp. 1-2, italics added.)
The Senate Judiciary Committee report then synthesizes the holding of Walters: “In the case of In re Walters[, supra, ]15 Cal.3d 738, the California *399 Supreme Court held unanimously that, unless waived, a judicial determination of probable cause is required in every case in which a defendant charged with a misdemeanor is detained awaiting trial. In re Walters was in turn based on the U.S. Supreme Court decision in Gerstein v. Pugh[, supra, ]420 U.S. 103, which required such a probable cause determination, but which afforded the states wide latitude in fulfilling the requirement.” (Sen. Com. on Judiciary, supra, at p. 2.)
The Senate judiciary committee report then expressly identifies the relationship between the Walters opinion and Assembly Bill No. 2931: “The structure of the pretrial probable cause determination set forth in In re Walters is similar to that in [Assembly Bill No.] 2931 [¶] (a) Arraignment is the most appropriate stage at which to make a judicial determination of probable cause that the defendant is being properly detained. However, the parties may stipulate to a later determination or the court may, for good cause, continue the determination on defendant’s motion. [¶] (b) Use of complaint: When a defendant is arrested pursuant to a warrant, probable cause may be based solely upon examination of the complaint, arrest warrant, and supporting affidavit. If the defendant is arrested without a warrant, the judge may make her or his determination upon a sworn complaint that incorporates by reference other factual materials supporting probable cause. Probable cause may also be proved by a sworn complaint that, without reference to other materials, fully explicates the factual basis of the crime charged. [¶] (c) Testimonial evidence: In re Walters would also permit the prosecution to utilize testimonial evidence on the issue of probable cause in the presence of the defendant and her or his attorney if relevant documentation did not support continued detention.” (Sen. Committee on Judiciary, supra, at pp. 2-3.)
The Senate Judiciary Committee report describes the probable cause hearing as follows: “2. Preliminary hearing procedure [¶] Under this bill the probable cause hearing would take place as follows: [¶] (a) If a defendant was in custody and had pleaded not guilty, the magistrate, on motion of either counsel or the defendant, would at the time of arraignment determine whether probable cause existed to believe that the defendant was guilty of a public offense. [¶] (b) The court would determine probable cause immediately, or, upon a good cause showing, could grant a continuance, not to exceed three days. [¶] (c) In determining probable cause, the court could consider any arrest warrant and supporting affidavits, the sworn complaint, and other similarly reliable documents. [¶] (d) If the court determined that probable cause existed, the case would be set for trial. [¶] (e) If the court determined that probable cause did not exist, the complaint would be dismissed and the defendant discharged.” (Sen. Committee on Judiciary, supra, at pp. 3-4, italics added.)
*400 After the July 8, 1980 Senate hearing, Assembly Bill No. 2931 was amended to add what is now section 1043.5.[2] (Assem. Bill No. 2931, as amended July 9, 1980, pp. 1-3.) A report prepared for Senate consideration of the July 9, 1980 amendment describes the probable cause hearing portion of Assembly Bill No. 2931: “This bill would establish a procedure for determining probable cause in misdemeanor cases where the defendant is in custody at the time he or she appears before the magistrate for arraignment and upon motion of [counsel]. Specifically, the bill would: [¶] 1) Require the court to determine the probable cause issue immediately, or for good cause continue the hearing for up to three days; [¶] 2) Require the court, in determining probable cause, to consider any warrant or supporting affidavits, the sworn complaint and other documents of similar reliability; and [¶] 3) Require the court to set the matter for trial if probable cause exists, or else dismiss the complaint.” (Sen. 3d reading rep. on Assem. Bill No. 2931, as amended July 9, 1980, prepared for Sen. floor vote May 19, 1980, p. 1, italics added.)
After the Senate amendments were adopted, Assembly Bill No. 2931 returned to the lower house for further action. While the legislation was awaiting concurrence in the Senate amendments, Mr. White, on behalf of the district attorneys association, weighed in again with concerns about Assembly Bill No. 2931. Mr. White was concerned because the legislation went beyond the Walters decision in one respect. Assembly Bill No. 2931 required dismissal of the complaint in addition to the defendant’s release. On July 17, 1980, Mr. White wrote: “We believe your proposal is an attempt to codify a 1975 California Supreme Court decision, In re Walters, 15 Cal.3d 738, in which it was held that a judicial determination of probable cause must take place for the continued detention of a person charged with a misdemeanor. The court further held that if there is no probable cause, the defendant must be discharged from custody. The rationale for this decision was an accommodation between an individual’s right to liberty and the State’s duty to control *401 crime. The probable cause determination became a condition for any significant pretrial restraint of liberty. [¶] Your proposal does provide an in-custody defendant with his right to a preliminary hearing where the charged offense is a misdemeanor. However, because the bill would additionally mandate a dismissal of the case, along with a discharge of the defendant, if there is no probable cause to believe the defendant committed the misdemeanor, it goes beyond In re Walters.” (Steve White, California District Attorneys Assn., letter to Assemblymember Harris regarding Assem. Bill No. 2931, as amended May 7, 1980, July 17, 1980, p. 1.) Mr. White then requested that Assembly Bill No. 2931 be amended to provide for an accused’s release on her or his own recognizance rather than dismissal and the defendant’s discharge. (Letter to Assemblymember Harris, supra, at p. 1.)
The unfinished business report prepared for the Assembly digested the bill as passed by the Assembly: “As passed by the Assembly, this bill established a procedure for determining probable cause in misdemeanor cases where the defendant is in custody at the time he or she appears before the magistrate for arraignment and upon motion of counsel. Specifically, the bill: [¶] 1) Required the court to determine the probable cause issue immediately, or for good cause continue the hearing for up to three days; [¶] 2) Required the court, in determining probable cause, to consider any warrant or supporting affidavits, the sworn complaint and other documents of similar reliability; and [¶] 3) Required the court to set the matter for trial if probable cause exists, or else dismiss the complaint.” (Assem. Off. of Research, Unfinished Business Analysis of Assem. Bill No. 2931, amended July 9, 1980 & Cone. Sen. Amends, to Assem. Bill No. 2931, Aug. 19, 1980, p. 1, italics added.) No reference in the Assembly unfinished business report prepared after Senate action is made to dismissal of individual counts.
Once legislative action was completed, Assembly Bill No. 2931 was sent to Governor Brown for review. As noted, Assembly Bill No. 2931 enacted sections 991 and 1043. The enrolled bill report prepared by then Legal Affairs Adviser Anthony J. Kline discusses the legislation’s purpose and effect: “This bill makes two separate changes in criminal procedures in municipal court. [¶] . . . Case law currently provides that if a person charged with a misdemeanor is not released on bail or his own recognizance prior to arraignment, upon request, the court must hold a probable cause hearing. If it does not find probable cause, the defendant must be released pending trial. (In re Walters (1975) 15 Cal.3d 738.) [¶] This bill goes beyond the Walters’ decision and requires that the charges be dismissed if probable cause is not established, although the prosecution may thereafter refile the complaint within 15 days. [¶] This provision of the bill is opposed by both district attorneys and judges who believe it will only result in more court work and delays. They also question whether this provision is truly in the defendant’s best interest, since if charges are in fact refiled he will be rearrested and *402 probably have to post bail again.” Mr. Kline’s enrolled bill report concludes that although “this provision is bad law,” its application would be limited to cases of in-custody defendants; where the accused requests a hearing; and where the court finds “there is no probable cause.” Mr. Kline also discusses prosecutors’ support for section 1043.5, which allows a preliminary hearing to continue if the accused absconds. Mr. Kline recommended Assembly Bill No. 2931 be permitted to become law without the Governor’s signature with an appropriate gubernatorial message. Mr. Kline’s analysis reflects consideration of the views expressed by the various stakeholders during the legislative process. Nothing in Mr. Kline’s enrolled bill report states that Assembly Bill No. 2931 will permit the dismissal of individual counts.
Governor Brown did not sign Assembly Bill No. 2931. Rather, he allowed Assembly Bill No. 2931 to become law without his signature. In his September 30, 1980 letter to the Assembly, Governor Brown explained section 1043.5 provided needed procedures to control disruptive defendants during preliminary hearings.[3] However, the second paragraph of Governor Brown’s letter explains that another purpose of Assembly Bill No. 2931, the enactment of section 991, was to codify the Walters decision: “However, the bill also contains an unrelated provision which attempts to codify the court’s ruling in In re Walters (1975) 15 Cal.3d 738. This portion of the bill may result in additional court proceedings and subject defendants to repeated arrests; is bad law and should be corrected by the Legislature next session.” (Governor Edmund G. Brown, Jr., letter to Assem. concerning Assem. Bill No. 2931, supra, at p. 1.) As noted previously, Governor Brown stated that the legislative purpose in enacting section 991 was to codify the Walters decision. And, nothing in Governor Brown’s letter indicates, from his perspective, that the Legislature intended to allow for the dismissal of individual counts. Rather, the obvious focus is on the dismissal of a complaint with the ensuing release of the accused to be followed by the filing of an amended misdemeanor complaint.
Finally, various parties presented letters of support or opposition to Assembly Bill No. 2931. None of those letters asserts Assembly Bill No. 2931 permits the dismissal of individual counts as distinguished from the entire complaint. (Michael L. Pinkerton, Cal. Attorneys for Criminal Justice, letter to Governor Edmund G. Brown, Jr., regarding Assem. Bill No. 2931, Sept. 17, 1980, p. 1 [“This bill is needed to eliminate frivolous misdemeanor *403 complaints at an early stage. . . .”]; Steve White, letter to Assemblymember Harris, supra, at p. 1; J. Michael Byrne, Executive Committee of Criminal Justice Section, Los Angeles County Bar Assn., letter to Assem. Speaker Leo T. McCarthy regarding Assem. Bill No. 2931, Sept. 17, 1980, p. 1 [letter of opposition]; Judge Brian D. Crahan, Los Angeles County Municipal Court Judges’ Assn., letter to Sen. Bob Wilson regarding Assem. Bill No. 2931, as amended May 7, 1980, July 13, 1980 [letter of opposition]; Maureen P. Higgins, Deputy Attorney General, letter to Assemblymember Harris regarding Assem. Bill No. 2931, Apr. 18, 1980 [letter of opposition]; Marjorie C. Swartz, Deputy State Public Defender, letter to Assemblymember Harris regarding Assem. Bill No. 2931, Apr. 18, 1980 [letter of support]; Michael L. Pinkerton, Cal. Attorneys for Criminal Justice, letters to Assemblymember Harris regarding Assem. Bill No. 2931, Apr. 10 and 16, 1980 [letters of support]; Steve White, supra, Apr. 10, 1980 [letter of opposition]; Judge Brian D. Crahan, Los Angeles County Municipal Court Judges’ Assn., letter to Assemblymember Harris regarding Assem. Bill No. 2931, Apr. 11, 1980 [letter of opposition].) The entirety of the foregoing documents demonstrates an absence of any legislative intention to permit individual counts to be dismissed as distinguished from the entirety of the misdemeanor complaint.
D. Evidence Cited by Defendant in Support of His Argument that Section 991 Provides a Judge or Magistrate with the Authority to Dismiss Individual Counts
By contrast, defendant contends there are legislative documents which show the Legislature expected section 991 permitted a trial court to dismiss individual counts. A number of documents contain the following language: “Currently there is no procedure to weed out groundless misdemeanor complaints prior to trial. Proponents argue that this bill would permit the dismissal of unsupported or frivolous charges. Proponents indicate that certain indigents accused of misdemeanors can be in custody for 30 days before groundless charges can be weeded out.” (Assem. Com. on Criminal Justice (Assem. Bill No. 2931) Apr. 21, 1980, p. 2; Assem. Com. on Criminal Justice (Assem. Bill No. 2931) Apr. 28, 1980, p. 2.) Similar language appears in Senate reports: “Proponents argue that this bill would establish a procedure for the expeditious dismissal of unsupported or frivolous charges. They also state that, under the present system, people accused of misdemeanors are in custody for 30 days before groundless charges can be ascertained.” (Sen. 3d reading rep. on Assem. Bill No. 2931, as amended July 9, 1980, p. 1; Sen. Democratic Caucus, Rep. on Assem. Bill No. 2931, as amended July 9, 1980; Sen. Com. on Judiciary, Rep. on Assem. Bill No. 2931, supra, pp. 4-5; Sen. Com. on Judiciary, Rep. on Assem. Bill No. 2931, as amended May 7, 1980, pp. 4-5.)
*404 In addition, there are documents using the terminology “preliminary hearing” to describe the section 991 proceeding. Defendant utilizes these references to a preliminary hearing to support his argument that individual counts may be dismissed as would be the case in a felony prosecution. The first references to a preliminary hearing are in the two Assembly Criminal Justice Committee reports prepared for April 21 and 28, 1980 hearings, and provide as background analysis: “Persons accused of felony offenses have a right to a hearing before being held to answer on the charges. The hearing is to determine whether there is reasonable cause to believe a felony has been committed by the defendant. The purpose of the preliminary hearing is to weed out groundless or unsupported charges (Witkin, Ca. Crim. Pro. p. 128). Persons accused of misdemeanors and persons who waive their right to a preliminary hearing do not have a right of review of the charges against them prior to trial.” (Assem. Com. on Criminal Justice, supra, Apr. 28, 1980, p. 1; Assem. Com. on Criminal Justice, supra, Apr. 21, 1980, p. 1.) The exact same language appears in the report prepared for the final Senate vote. (Sen. third reading report, supra, p. 2.) As can be noted, the two Assembly reports confuse the felony procedure with misdemeanor case processing. This misunderstanding is probably based upon the previously discussed error in the Legislative Counsel’s Digest. However, the two Assembly reports describe the proposed section 991 hearing as a preliminary hearing. The same is true of the Senate third reading report.
Similarly, the Los Angeles County Municipal Court Judges’ Association argued that Assembly Bill No. 2931 created a time-consuming preliminary hearing for misdemeanors and thereby opposed the proposed legislation. (Judge Brian D. Crahan, letters to Sen. Bob Wilson and Assemblymember Harris, supra, Apr. 11 and July 13, 1980.) The Senate Judiciary Committee report identifies the opposition from the municipal court judges and comments: “The Los Angeles County Judges’ Association states that preliminary hearings for misdemeanors are unnecessary given existing procedures for challenging probable cause. [¶] The Association is also concerned that these hearings would only add to court congestion. [¶] SINCE A DETERMINATION OF PROBABLE CAUSE IS MANDATED BY BOTH THE U.S. AND CALIFORNIA SUPREME COURTS, WHAT IS THE BASIS FOR OPPOSITION BY LOS ANGELES MUNICIPAL COURT JUDGES?” (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 2931, supra, at p. 5.) One additional report indirectly adverts to the municipal court judges’ congestion concerns. (Sen. Democratic Caucus, supra, at p. 1.)
E. Analysis
The weight of the evidence indicates the Legislature did not consider whether nor intend to allow for the dismissal of individual counts during the *405 misdemeanor probable cause hearing. First, Assembly Bill No. 293l’s purpose was to codify the Gerstein and Walters requirement that a probable cause determination be made before a misdemeanor defendant remains in custody awaiting trial. In allowing Assembly Bill No. 2931 to become law without his signature, Governor Brown expressly so stated. The Senate Judiciary Committee report expressly states the purpose of Assembly Bill No. 2931 is to create a procedure to eliminate “groundless misdemeanor complaints” and “codify In re Walters.” (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 2931, supra, p. 2.)
Further, the Tucker memorandum which contains the floor statement for Assemblymember Harris states that Assembly Bill No. 2931 is merely a codification of Walters. (Tucker memorandum, pp. 1-2.) And, as explained by the Senate Judiciary Committee staff, Assembly Bill No. 2931 structures the probable cause hearing so as to comply with the Walters decision and the Fourth Amendment. (In re Walters, supra, 15 Cal.3d at pp. 750-753; Sen. Com. on Judiciary, Rep. on Assem. Bil No. 2931, supra, at pp. 1-4.) The only difference between the Fourth Amendment requirements described in Walters and Assembly Bill No. 2931 is the requirement a complaint be dismissed as distinguished from requiring the accused’s release. This was the precise issue identified by Mr. White of the district attorneys association, Mr. Kdine and Governor Brown. Nothing in Walters requires dismissal of a complaint; if probable cause is not present, the accused must be released. More to the point, nothing in Walters requires dismissal of individual counts. But, both Assembly Bill No. 2931 and Walters required discharge of a misdemeanor accused if probable cause is not present.
Second, the committee reports and other documents only refer to dismissal of the complaint, not individual counts. On 12 occasions, legislative history documents refer to dismissal of a complaint. On no occasion does any report, analysis, letter or version of Assembly Bill No. 2931 refer to dismissal of an individual count. Thus, defendant’s nonspecific references to the dismissal of frivolous charges language do not support the theory that dismissal of individual counts is appropriate. Defendant seeks to utilize committee reports to support a position which never is articulated in the legislative process— that individual counts may be dismissed. The only disposition in terms of dismissal mentioned in any legislative documents (including versions of Assem. Bill No. 2931) is the complaint’s dismissal. (§ 991, subd. (d) [“dismiss the complaint”].)
Third, defendant’s theory that the section 991 misdemeanor probable cause hearing can be analogized to preliminary hearing where individual counts can be dismissed is without merit. The preliminary hearing, an alternative to the grand jury indictment processes, has its basis in the English common law. *406 The United Supreme Court has explained the use of an information as an alternative to indictment was “an ancient proceeding at” common law. (Hurtado v. California (1884) 110 U.S. 516, 525-526, 538 [28 L.Ed. 232, 4 S.Ct. 111]; see Jones v. Robbins (1857) 74 Mass. 329, 346; Israel, Free-Standing Due Process and Criminal Procedure: The Supreme Court’s Search for Interpretive Guidelines (Spring 2001) 45 St. Louis U. L.J. 303, 318.) The preliminary hearing process was first adopted in 1850 as part of the Act to regulate the Proceedings in Criminal Cases. (Stats. 1850, ch. 119, §§ 147-163, pp. 286-287.) Since the adoption of the Constitution of 1879, unless a felony is charged with an indictment, a preliminary hearing is the constitutionally mandatory procedure before a felony information may be filed. (Cal. Const., art. I, § 14; Kalloch v. Superior Court (1880) 56 Cal. 229, 233-234.) None of the committee reports or other memoranda compare the felony and misdemeanor charging processes other than to reference the fact there is no preliminary hearing in a case such as ours.
Here, the Legislature used language consistent only with dismissal of the entire complaint. In addition, the committee reports and other documents indicate the purpose of Assembly Bill No. 2931 was to comply with the Fourth Amendment requirements imposed by Gerstein and Walters. No such legislative history exists in the case of felony preliminary hearings which, as noted, finds its basis in English common law; the first criminal enactments after statehood; and in the California Constitution. Also, a felony preliminary hearing applies to both incarcerated and out-of-custody defendants. Section 991 applies only to in-custody defendants. And for good reason, Assembly Bill No. 2931 was adopted in response to the Fourth Amendment custody concerns identified in Gerstein and Walters. And, felony preliminary hearings and section 991 involve the use of entirely different evidence. The detention decision required by section 991 only involves the use of reports, not live sworn testimony as in the case of a felony preliminary hearing. More to the point, no committee report states that felony preliminary hearing procedures apply to the misdemeanor probable cause determination.
One additional comment is in order concerning defendant’s preliminary hearing analogy intention. At oral argument, defendant argued section 991 is a mere four sections away from section 995. Thus, defendant reasoned the Legislature intended a detained misdemeanant accused may secure dismissal of an individual count pursuant to section 991. Sections 991 and 995 are codified in part 2, title 6 of the Penal Code which is entitled, “Pleadings and Proceedings Before Trial.” Chapter 1 of title 6, in which section 991 appears, is entitled, “Of the Arraignment of the Defendant.” Section 995 is not in chapter 1 of title 6. And for good reason, section 995 is not an arraignment-related provision. Rather, section 995 appears in chapter 2 of title 6 which is entitled, “Setting Aside the Indictment or Information.” Accordingly, sections 991 and 995 appear in separate chapters directed at different stages of the *407 criminal proceedings. The two statutes serve different purposes and are derived from disparate times in our state’s history. With respect, defendant’s legislative intent propinquity proposition is unpersuasive.
Finally, in engaging in construction of all statutes, ambiguous or otherwise, the most important consideration is the language chosen by the Legislature. (In re Ethan C., supra, 54 Cal.4th at p. 627; Pineda v. Williams-Sonoma Stores, Inc., supra, 51 Cal.4th at pp. 529-530.) As noted, section 991 only refers to dismissal of the entire complaint. Thus, if there is sufficient ambiguity to warrant judicial construction, the words referencing dismissal of the complaint selected by the Legislature in section 991 conclusively resolve the issue. (§ 991, subd. (d) [“If the court determines that no such probable cause exists, it shall dismiss the complaint and discharge the defendant.”].)
In a similar vein, section 991, subdivision (d) makes little sense if defendant’s statutory construction is adopted. Section 991, subdivision (d) states in part: “If, after examining these documents, the court determines that there exists probable cause to believe that the defendant has committed the offense charged in the complaint, it shall set the matter for trial. [¶] If the court determines that no such probable cause exists, it shall dismiss the complaint and discharge the defendant.” If probable cause is not present, the complaint must be dismissed and the defendant discharged. No other reading of section 991, subdivision (d) is plausible. Defendant’s theory, which allows for dismissal of not all the counts but no discharge of an accused, cannot be supported by the statutory language. Defendant does not argue that he would be entitled to discharge because two of the three counts were dismissed. Thus, the “discharge the defendant” language cannot apply to defendant. Yet that is the precise language (“discharge the defendant”) utilized by the Legislature. Section 991, subdivision (d) does not speak to what occurs when fewer than all the counts are unsupported by probable cause and dismissed. And the reason for this is that section 991 is designed to enforce the Fourth Amendment custody protections available to misdemeanants articulated in Gerstein and Walters. The statutory language, the best indication of legislative intent, does not support defendant’s theory that section 991 allows dismissal of less than all of the counts. For these collective reasons, I reach the same conclusions as did the appellate division.
On December 8, 2015, the opinion was modified to read as printed above.

 Future statutory references are to the Penal Code.

 Section 1043.5 states: “(a) Except as otherwise provided in this section, the defendant in a preliminary hearing shall be personally present. [¶] (b) The absence of the defendant in a preliminary hearing after the hearing has commenced in his presence shall not prevent continuing the hearing to, and including, holding to answer, filing an information, or discharging the defendant in any of the following cases: [¶] (1) Any case in which the defendant, after he has been warned by the judge that he will be removed if he continued his disruptive behavior, nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that the hearing cannot be carried on with him in the courtroom. [¶] (2) Any prosecution for an offense which is not punishable by death in which the defendant is voluntarily absent. [¶] (c) Any defendant who is absent from a preliminary hearing pursuant to paragraph (1) of subdivision (b) may reclaim his right to be present at the hearing as soon as he is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings. [¶] (d) Subdivisions (a) and (b) shall not limit the right of a defendant to waive his right to be present in accordance with Section 977.”

 The first paragraph of Governor Brown’s letter to the Assembly states: “I am allowing Assembly Bill [No.] 2931 to become law without my signature because it provides needed changes which will prevent criminal defendants from disrupting or frustrating court procedures. In view of the longer and more complex preliminary hearings resulting from the recent decision in Hawkins v. Superior Court (1978) 22 Cal.3d 584 [150 Cal.Rptr. 435, 586 P.2d 916], prosecutors believe this protective legislation is necessary.” (Governor Edmund G. Brown, Jr., letter to Assem. concerning Assem. Bill No. 2931, Sept. 30, 1980, p. 1.)