Filed 5/13/25

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN


| | |
|---|---|
| ELAINE ALVES et al., | B338413 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 23STCP00999) |
| v. | |
| SHIRLEY N. WEBER, as Secretary of State, etc., | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Alison Mackenzie, Judge. Affirmed in part, reversed in part, and remanded with directions.

Rob Bonta, Attorney General, Thomas S. Patterson, Senior Assistant Attorney General, Anthony R. Hakl and Nicholas R. Green, Deputy Attorneys General, for Defendant and Appellant.

Law Offices of Mark A. Redmond, Mark A. Redmond; Salisbury Legal and Lawrence J. Salisbury for Plaintiffs and Respondents.

_____

Petitioners[1] were defrauded by a now-defunct corporation that purported to sell them long-term health care and estate

[1]     Elaine Alves, Ronald Alves, Bradley Bailey for Kenneth Bailey and Lois Bailey, Bonnie Beardsley, Lee Boblet, Lee Boblet for Marjorie Boblet, Winnifred Beck for Erma Boswell, Thomas Bricks for Norah Bricks, Sharon Broglio, James Broglio, Patricia Silveria for F. Galen Berns, Jeri Chapman, Jeri Chapman for Charles Chapman, Karen E. Corey for Marilyn Corey, Catherine Costa, Robert Coupe for William Coupe and Elinor Coupe, Angela Da Re for Brunello Da Re, Pamela Daniel-Arterberry, Miriam DaSilva, Serafin DeJesus, Celfa DeJesus, Marsha Diel for Toni Crews, Cheryl S. Choker for Hazel Donat, Joan Doughty, Janice Duncan, Sharon Erhardt, Pascual Fernandez, Maria Fernandez, Faye Fernandez, David Flowers, Nellie Fry, Nellie Fry for William Fry, Brian Good for Sherman Good, Damon Graddy for Michaela Graddy, Isabelle Gray, Doris Hale, Larry Hand, Karen Hand, Alice Healy, Julie Helgeson for George Helgeson-Wilkins and Carolyn Helgeson-Wilkins, David Henry, Robert Palmer for Thomas Houston, Robert Jensen for Harry A. Jensen, John Johnson, John Johnson for Betty Johnson, Mary Lou Johnson, Mary Lou Johnson for Lorraine Johnson, Margaret Keating, Charles Keith, Charles Keith for Jo Marie Keith, Darrell Kenworthy for Chester Kenworthy and Adella Kenworthy, John Kern, Arlene Kern, Walter Kessler for Joan Kessler, Kevin Keyes, Fredric King, Barbara Klipple, Loretta Marshall for Emil Koepplin and Anna Koepplin, Mary Kruger, Gerald Kunde, Gerald Kunde for Thurlyne Kunde, Edward Longan, Clark Tubbessing for Carol Lorre, Mabel Lotz, Marion Masada for Saburo Masada, Gail Johnson for Virginia Mattei and Pamela Mattei, Timothy McCully for Margaret McCully, Nancy Schmidt for Lorraine Metzger, James Moore for Agnes Moore, John S. Morgan for Wilford Morgan, Don Mueller for Donna Mueller, Donn Mueller, Donna Westcoat for Joseph Mulligan, Roger Olson, Roger Olson for Patricia Olson, Dietra Prater Slack, Debra

planning services they never received.  Unable to obtain compensation for their losses directly from the corporation, petitioners secured a federal bankruptcy court judgment against the corporation and applied for restitution from the Victims of Corporate Fraud Compensation Fund.  (Corp. Code, § 2280 et seq.[2])  The Secretary of State, who is charged with administering the Fund, denied petitioners' applications, and petitioners filed a verified petition in the superior court for an order directing payment from the Fund.  The superior court granted the petition, and the Secretary appealed.

On appeal, we must determine whether petitioners met the Fund's requirement that they obtain "a final judgment in a court of competent jurisdiction against a corporation *based upon* the corporation's fraud, misrepresentation, or deceit."  (§ 2282,

---

Purvis, Debra Purvis for Dora Purvis,  Lark Granger for Renz Louis and Janet Renz, Floyd Riffey, Junko Roberts for Virgus Roberts, Beatrice Rolph for Kenric Rolph, Anna Sanchez, Leroy Sanchez, Nancy Schmitz, Carolyn Sellers, Earl Sellers, Joseph Smith, Joseph Smith for Delores Smith, Neil Snowden, Neil Snowden for Beatrice Snowden, Phillip Stinson for William Stinson, Laura Strong for Dorothy Strong and James Strong, Leroy Taylor, Alice Taylor, Leslie Tribe for Leah Tribe-Malan, Rosemary Trujillo for Louis Trujillo and Yvonne Trujillo, Clark Tubbessing for Pauline Tubbessing, Kirk Tutor for William Tutor, Gerald Vinson for Katherine Vinson, Sally Wander, Sally Wander for Jack Wander, Gary Wheeler, Joy Williams, Sandra Wright for Ronald Wright, David Yarbrough for Howard Yarbrough and Bernadine Yarbrough, and Michael Zabalza for Maria Zabalza.

[2]      Undesignated statutory references are to the Corporations Code.

subd. (a), italics added.) We conclude they did. The bankruptcy court's final judgment expressly adjudged petitioners "the victims of misrepresentation that satisfies all the essential elements of the California tort of intentional misrepresentation" and awarded specific monetary damages against the corporation. The underlying bankruptcy complaint—although styled as an action to determine nondischargeability of debt—asserts a cause of action for the California tort of intentional misrepresentation and avers facts in support of that cause of action. Additionally, the statutory framework contemplates the Secretary and the superior court will consider evidence and engage in fact finding to resolve any ambiguity regarding the basis for the judgment. Petitioners furnished the bankruptcy court with evidence supporting their allegations of the corporation's fraud against them, and the superior court found the evidence proved the bankruptcy court's judgment was for fraud.

For these reasons, we affirm the superior court's judgment with respect to its determination that petitioners are entitled to payment from the Fund. We reverse and remand, however, for the superior court to specify the amount the Secretary shall pay each petitioner.

## FACTUAL AND PROCEDURAL BACKGROUND

Senior Care Advocates, Inc. (SCA) sold petitioners long-term health care benefits and estate planning services. Petitioners never received the benefits or services, and SCA went out of business. In 2009, SCA filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of California. The bankruptcy case eventually closed, but in May 2021, petitioners successfully applied to reopen it.

4

On June 18, 2021, petitioners filed a complaint in the bankruptcy court "to determine non-dischargeability of debt," in which they alleged: (1) a claim under title 11 United States Code section 523(a)(2)(A); (2) a claim under Welfare and Institutions Code section 15610.30; and (3) a claim under title 11 United States Code section 727. The complaint also sought "a judgment determining the . . . essential elements of the California tort of intentional misrepresentation have been satisfied" and alleged facts to support that cause of action.

The complaint attached charts with petitioners' individual alleged damages. Schedule A set forth economic damages for each petitioner, ranging from $244.30 to $66,000. Schedule B set forth emotional distress damages for petitioners, with each petitioner claiming $50,000.

Petitioners served the complaint on SCA, and SCA did not file any responsive pleading. On August 16, 2021, petitioners moved for default judgment. In support of their motion, petitioners submitted two expert declarations—one from an attorney, who opined on the nature of SCA's fraud, and one from a psychologist, who quantified the psychological and emotional damage each petitioner sustained. Several petitioners also submitted declarations setting forth the facts of SCA's fraud against them.

On August 24, 2021, the bankruptcy court issued a default judgment in favor of petitioners. The bankruptcy judgment states, "IT IS ORDERED AND ADJUDGED that Plaintiffs [i.e., petitioners] were the victims of misrepresentation that satisfies all the essential elements of the California tort of intentional misrepresentation." It also found petitioners were "the victims of financial elder abuse." In addition, it noted that "discharge of the

5

debt was denied" and "the claims for fraudulent misrepresentation under California law are not dischargeable." Finally, the bankruptcy court ordered that petitioners, "as creditors in this adversary proceeding, are awarded monetary damages against the debtor, [SCA], in the amounts prayed for in the Complaint."

On November 21, 2021, petitioners filed applications with the Secretary for compensation from the Fund based on the bankruptcy judgment. After correspondence between the Secretary and petitioners, the Secretary ultimately issued a decision denying their applications on September 29, 2022. As pertinent here,[3] the denial notice states:

"The Applications have been denied because the Default Judgment issued by the United States Bankruptcy Court for the Eastern District of California . . . does not appear to be a qualifying judgment for corporate fraud for purposes of the [Fund]. Further, none of the three claims for relief alleged in the Complaint to Determine Non-Dischargeability of Debt (11 USC 523 & 727), upon which the Default Judgment was based, are a 'cause of action . . . for fraud . . . '. See California Corporations Code sections 2281(g) and 2288(b)(2)."

On March 28, 2023, petitioners filed a verified petition in the superior court under section 2287, subdivision (a), seeking an order directing payment from the Fund. The superior court granted the petition. The court concluded the bankruptcy court judgment was a qualifying judgment for compensation under the Fund. It explained that the complaint contained allegations of fraud and asked for a judgment finding the elements of fraud

---

[3]     The Secretary no longer pursues a number of other alleged deficiencies referenced in the denial notice.

6

under California law were satisfied.  In addition, the superior court found that the default judgment was not the sole basis for petitioners' claim, because "[t]he administrative record . . . contain[ed] ample evidence supporting the bankruptcy court's default judgment against SCA for fraud."  The court ordered the Secretary to compensate petitioners from the Fund in the amounts set forth in the bankruptcy court's default judgment.

The Secretary timely appealed.

## DISCUSSION

A.   *Standard of Review*

Where, as here, the "'[superior] court has used the independent-judgment standard in an administrative mandamus proceeding, the province of the appellate court is analogous to that in an ordinary civil appeal.'" (*Worthington v. Davi* (2012) 208 Cal.App.4th 263, 277–278 (*Worthington*); see also § 2287, subd. (d) [superior court conducts "de novo review of the merits of the application as contained in the administrative record"].)  "The appellate court gives the superior court's judgment the same effect as if a trial had been held in that court and reviews the court's decision to determine whether it is supported by substantial evidence.  It is the [superior] court's findings, and not those of the administrative agency, that will be reviewed on appeal." (*Worthington*, at p. 277.)  Under this standard, this court "examine[s] the whole record, including the administrative record, to determine whether substantial evidence supports the [superior] court's decision, and will resolve all conflicts and indulge all reasonable inferences in favor of the party who prevailed in the [superior] court." (*Ibid.*)

However, "'on pure questions of law, including the interpretation of statutes,'" we "'exercise[] independent

7

judgment.'" (*Akella v. Regents of Univ. of Cal.* (2021) 61 Cal.App.5th 801, 815).  "'Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose.'" (*Prang v. Los Angeles County Assessment Appeals Bd.* (2024) 15 Cal.5th 1152, 1170 (*Prang*), quoting *Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.)  "'We first consider the words of the statutes, as statutory language is generally the most reliable indicator of legislation's intended purpose.'" (*Ibid*.) "'We consider the ordinary meaning of the relevant terms, related provisions, terms used in other parts of the statute, and the structure of the statutory scheme.'" (*Ibid*.)

"If the relevant statutory language permits more than one reasonable interpretation, we look to appropriate extrinsic sources, such as the statute's purpose, legislative history, and public policy." (*Prang*, *supra*, 15 Cal.5th at p. 1170.)  "[C]ourts should liberally construe remedial statutes in favor of their protective purpose" (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 532 (*Pineda*), citing *People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 313), while remaining mindful that liberal construction of remedial statutes "does not mean that a court may read into the statute that which the Legislature has excluded, or read out that which it has included" (*Davis v. Harris* (1998) 61 Cal.App.4th 507, 512; accord, *Quarry v. Doe I* (2012) 53 Cal.4th 945, 988).

B.    *The Statutory Framework of the Fund*

The Legislature created the Fund in 2002, as part of the California Corporate Disclosure Act, for "the sole purpose of providing restitution to the victims of a corporate fraud."  (§ 2280;

see also Stats. 2002, ch. 1015 (Assem. Bill No. 55).) The Fund is sustained largely by corporate disclosure fees, paid by each corporate entity when filing its annual statement of information. (§§ 1502, subd. (i), 2291.) It is administered by the Secretary of State. (§ 2280.) The statute initially required the Secretary to "adopt regulations regarding the administration of the [F]und and the eligibility of victims to receive compensation from the [F]und." (Stats. 2002, ch. 1015 (Assem. Bill No. 55) § 3; see also Cal. Code Regs., tit. 2, § 22500 et seq. (2004–2011).)

In 2012, the Legislature "revise[d] and recast" the regulations promulgated by the Secretary and codified the requirements to receive compensation from the Fund. (Stats. 2012, ch. 564 (Sen. Bill No. 1058).) The impetus behind this change was to streamline the process, as the Secretary's "regulations [we]re burdensome and often [led] to unnecessary delay in payments of compensation and result[ed] in underutilization of the Fund." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1058 (2011–2012 Reg. Sess.) July 3, 2012.) The delayed payments "only continue[d] to victimize the exact people whom the Fund was created to benefit." (Sen. Ted Lieu, sponsor of Sen. Bill No. 1058 (2011–2012 Reg. Sess.), letter to Governor, Sept. 6, 2012.)

Under the statute, "[w]hen an aggrieved person obtains a final judgment in a court of competent jurisdiction against a corporation based upon the corporation's fraud, misrepresentation, or deceit, made with intent to defraud," the person may apply to the Secretary of State for payment from the Fund of up to $50,000 of the amount unpaid on the judgment. (§§ 2282, subd. (a), 2289.) The application may be filed only after the claimant makes "diligent collection efforts" for the amount

9

unpaid on the judgment that represents "the awarded actual and direct loss." (§ 2282, subd. (a).) The Secretary is required to include a notice in the application informing the claimant "of his or her obligation to protect the underlying judgment from discharge in bankruptcy . . . ." (*Id.*, subd. (e).) If a bankruptcy proceeding is pending when the application is filed, the claimant must truthfully represent that "the judgment and debt have been declared to be nondischargeable . . . and that the claimant has been granted permission by the bankruptcy court to proceed with collection . . . ." (*Id.*, subd. (c)(8)(C)(iii).)

The claimant must also include in the application "[a] copy of [the] final judgment and a copy of the civil complaint and any amendments thereto upon which the judgment finding fraud, misrepresentation, or deceit, made with the intent to defraud, was made . . . . The claimant may also provide any additional documentation that he or she believes may help the Secretary of State in evaluating the application, including, but not limited to, evidence submitted to the court in the underlying judgment or a detailed narrative statement of facts in explanation of the allegations of the complaint upon which the underlying judgment is based." (§ 2282, subd. (c)(5).) "If the final judgment in favor of the claimant was by default, . . . the Secretary of State may request additional documents and information from the claimant to determine whether the claim is valid." (*Id.*, subd. (d)(2).)

The Secretary "may deny or grant the application or may enter into a compromise with the claimant to pay less in settlement than the full amount of the claim." (§ 2284, subd. (b).) If denied, the claimant may file a verified petition in the superior court for an order directing payment from the Fund. (§ 2287, subd. (a).) The superior court conducts a "de novo review of the

10

merits of the application as contained in the administrative record." (*Id.*, subd. (d).) The claimant has the "burden of proving compliance with the requirements of [s]ection 2282 by competent evidence at an evidentiary hearing." (*Ibid.*) The court "shall order payment out of the [F]und only upon a determination that the aggrieved party has a valid cause of action within the purview of [s]ection 2282." (§ 2288, subd. (a).) Where a civil judgment was obtained by default, "the petitioner shall have the burden of proving that the cause of action against the corporation or its agent was for fraud, misrepresentation, or deceit." (*Id.*, subd. (b)(2).)

C.     *Petitioners Obtained a Final Judgment Based Upon SCA's*
       *Fraud and Are Entitled to Relief from the Fund*

The question before us is whether the bankruptcy court's judgment is "*based upon* the corporation's fraud, misrepresentation, or deceit, made with intent to defraud." (§ 2282, subd. (a), italics added.) We determine that it is. In its final judgment,[4] the bankruptcy court ordered and adjudged "that

---

[4]     Section 2281, subdivision (g), defines "'[f]inal judgment'" as "a judgment . . . for which appeals have been exhausted or for which the period for appeal has expired, enforcement of which is not barred by the order of any court or by any statutory provision, which has not been nullified or rendered void by any court order or statutory provision, and for which the claimant has not otherwise been fully reimbursed." The statute provides "examples of final judgments" (*ibid.*), which include "civil judgment[s] that ha[ve] been entered against a corporation for fraud, misrepresentation, or deceit, with the intent to defraud, and [that] include[] findings of facts and conclusions of law" (*id.*, subd. (g)(1)). Although the Secretary notes in the factual

11

[petitioners] were the victims of misrepresentation that satisfies all the essential elements of the California tort of intentional misrepresentation." The judgment further ordered that petitioners, "as creditors in this adversary proceeding, are awarded monetary damages against the debtor, [SCA], in the amounts prayed for in the [c]omplaint." To conclude the judgment was not based upon intentional misrepresentation would require us to discount the bankruptcy court's plain orders and adjudgments as pronounced in the judgment itself. We have no basis to do so.[5]

The complaint underlying the bankruptcy court's judgment further supports the conclusion that the judgment was based upon SCA's fraud, misrepresentation, or deceit against petitioners. Although styled as a request to determine nondischargeability of debt, petitioners' complaint also sought "a judgment determining that the . . . essential elements of the California tort of intentional misrepresentation have been satisfied." In furtherance of that request, the complaint alleged in detail the nature of SCA's fraudulent scheme, chronicling how

---

background section of her opening brief that the bankruptcy court judgment "contains no reasoning or explanation," she does not rely on section 2281, subdivision (g)(1), or argue the judgment otherwise fails to meet the statutory definition of a "final judgment." Any contention that the bankruptcy judgment does not qualify as a "final judgment" is forfeited.

[5]     The federal bankruptcy court is a court of competent jurisdiction to issue qualifying judgments for purposes of relief from the Fund. (§ 2281, subd. (f) ["'Court of competent jurisdiction' means a state or federal court situated in California"].) The Secretary does not challenge the validity of the bankruptcy court's judgment.

12

SCA "propagated a campaign of fear targeting seniors, including [petitioners]," and convinced them they needed to buy SCA's services because they would need "long term care and that the cost of this care would result in them losing both their lifetime savings and their homes." In the body of the complaint, petitioners averred facts tracking the elements of California Civil Jury Instruction (CACI) No. 1900 on "Intentional Misrepresentation,"[6] namely: "that SCA made representations of material facts to [petitioners]; that, at the time of the representations, SCA knew the representations were false, or made the representation recklessly and without regard for its truth; that SCA intended [petitioners] rely on the representations; that [petitioners], and each of them, reasonably relied on the representations; that [petitioners], and each of them, were harmed; and, that [petitioners'] reliance on the representation was a substantial factor in causing them harm." Accordingly, the bankruptcy court's determination that petitioners were victims of intentional misrepresentation was

---

[6]     We echo the Supreme Court in "caution[ing] that jury instructions, whether published or not, are not themselves the law, and are not authority to establish legal propositions or precedent." (*People v. Morales* (2001) 25 Cal.4th 34, 48, fn. 7.) Nonetheless, CACI No. 1900 accurately reflects the elements of the tort of fraud and deceit through intentional misrepresentation. (See *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 974 ["The elements of fraud that will give rise to a tort action for deceit are: ""(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage""""]; see also Civ. Code, §§ 1709, 1710 [statutory definition of deceit].)

13

based upon petitioners' complaint, which requested that determination and set forth the law and facts to support it.

Although it would facilitate adjudication of Fund applications for a qualifying judgment's underlying complaint to allege fraud, misrepresentation, or deceit as an enumerated cause of action, nothing in the statute requires it. (Code Civ. Proc., § 1858 [in construing a statute the role of the court "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or omit what has been inserted"]; accord, *California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 939.) Section 2282, subdivision (a), requires the judgment be "based upon the corporation's fraud, misrepresentation, or deceit, made with intent to defraud," and subdivision (c)(8)(C)(i) requires claimants to represent in their applications "[t]hat the judgment was for fraud, misrepresentation, or deceit by the corporation or the agent of the corporation, with the intent to defraud." Neither of these subdivisions includes the term "cause of action," let alone a requirement that the complaint underlying the judgment contain a particular cause of action presented in a certain format.

The term "cause of action" is found twice in the statute. First, section 2288, subdivision (a), states the superior court "shall order payment out of the [F]und only upon a determination that the aggrieved party has a valid cause of action within the purview of [s]ection 2282." Second, section 2288, subdivision (b)(2), provides that "[i]f the civil judgment . . . in the underlying action on which the final judgment in favor of the petitioner was by default, . . . the petitioner shall have the burden of proving that the cause of action against the corporation or its agent was for fraud, misrepresentation, or deceit." In light of the statutory

14

framework as a whole, we do not read the use of the term "cause of action" in these two subdivisions as limiting relief to only judgments based on complaints alleging particular causes of action under separate headings. (See *Presbyterian Camp & Conference Centers, Inc. v. Superior Court* (2021) 12 Cal.5th 493, 508 [canon of statutory interpretation that no language in the statute should be read as mere surplusage is "simply a starting point for our analysis, and we avoid mechanistically applying it where it defeats the manifest statutory purpose"].)

As an initial matter, section 2288 applies to superior court proceedings following the Secretary's denial of an application, not to the Secretary's initial adjudication of an application for relief from the Fund. The term "cause of action" is absent from section 2281, which sets forth all pertinent statutory definitions; and, as discussed, the term is also absent from section 2282, the provision that sets forth the requirements and process for applying to the Secretary for compensation from the Fund. The Secretary's own regulations make no mention of "cause of action" either. (See generally Cal. Code Regs., tit. 2, § 22500 et seq.) If the term "cause of action" were meant to play an essential role in delimiting what qualifies for relief from the Fund, we expect the Legislature would have placed it more prominently in the statutory scheme. Instead, the only appearance of the term "cause of action" is in a code section the Secretary does not consult to determine whether claims qualify for relief.

The statutory framework as a whole further shows the Legislature contemplated the Secretary would look beyond the causes of action as alleged in the civil complaint to the underlying facts of the case where needed. If the Legislature meant for only those judgments deriving from causes of action entitled "fraud,"

15

"misrepresentation," or "deceit" to qualify for compensation under the Fund, it could have restricted claimants to submitting just their final judgments and the complaints upon which they are based. After all, whether a complaint states a particular cause of action is generally ascertainable from the contents of the complaint itself. (See *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [to determine whether a complaint states a cause of action, courts "assume the truth of the complaint's properly pleaded or implied factual allegations" and decide whether those facts are "sufficient to state a cause of action" under the law]; *Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1331 ["every element of the cause of action for fraud must be alleged in full, factually and specifically" to state a claim for relief in a complaint].)

Yet the statute does not limit Fund claimants to reliance on their judgments or complaints. The statute allows claimants to supplement their applications with the "evidence submitted to the court in the underlying judgment" and to provide "a detailed narrative statement of facts in explanation of the allegations of the complaint upon which the underlying judgment is based." (§ 2282, subd. (c)(5).) The statute also advises that, in cases of default judgments like this one, the Secretary "may request additional documents and information from the claimant to determine whether the claim is valid." (*Id.*, subd. (d)(2); see also Cal. Code Regs., tit. 2, § 22502, subd. (a) [Secretary's regulations requiring this additional documentation as a matter of course].) In addition, section 2288, subdivision (b)(2), one of the two subdivisions that uses the term "cause of action," does so in the context of explaining that the claimant has the "burden of proving" the cause of action was for fraud.

16

Read together, these features of the statutory scheme—which expressly permit claimants to submit evidence to prove their judgment and complaint were for fraud, misrepresentation, or deceit—evince the Legislature's intent to require the Secretary (and, if challenged further, the superior court) to look beyond the causes of action as pleaded in the complaint to the underlying facts as necessary.  (Cf. *Doyle v. Dept. of Real Estate* (1994) 30 Cal.App.4th 893, 898–899 (*Doyle*) [construing similar language in Real Estate Recovery Program as "clearly contemplat[ing] that the [administrator] may consider certain underlying facts in determining if the judgment was based on fraud"]; see also *Ceja v. Rudolph & Sletten, Inc.* (2013) 56 Cal.4th 1113, 1119 ["'We give the words their usual and ordinary meaning [citation], while construing them in light of the statute as a whole and the statute's purpose'"].)

The Secretary relies on *Yergan v. Department of Real Estate* (2000) 77 Cal.App.4th 959 (*Yergan*) to support the position that the judgment must be based on an express cause of action for fraud.  The court in *Yergan* addressed the question of whether a judgment was based upon fraud, misrepresentation, or deceit for purposes of the Real Estate Recovery Program.  Although the Program (at issue in *Yergan*) and the Fund (at issue here) cover different types of fraud, the statutes are materially analogous, as they share a similar compensatory purpose and contain large swaths of identical statutory text.  We therefore examine *Yergan* closely.

In *Yergan*, the plaintiffs filed a complaint alleging "causes of action for breach of fiduciary duty, fraud and deceit, negligent misrepresentation, negligent and intentional infliction of emotional distress, and fraudulent conveyance."  (*Yergan*, *supra*,

17

77 Cal.App.4th at p. 963.)  The parties ultimately reached a stipulation and settlement agreement "which limited recovery to the claims for negligence and breach of duty."  (*Id.* at p. 969.)  Because the judgment was based on a stipulation and settlement—which excluded the earlier claims for fraud, misrepresentation, and deceit—the court concluded that the judgment was not based upon fraud, misrepresentation, and deceit.  (*Id.* at pp. 968–969.)  *Yergan* stands for the proposition that where the terms of a settlement agreement are unambiguous and "expressly preclude the possibility that the judgment was based on fraud," a claim can be denied without looking at the underlying facts.  (*Ibid.*; cf. *Doyle*, *supra*, 30 Cal.App.4th at p. 898 ["Here, the Commissioner properly considered the evidence presented to determine if the underlying judgment was based on fraud"].)

The limited reach of *Yergan* outside the settlement context is discussed at length in *Worthington*, *supra*, 208 Cal.App.4th at pages 280 to 282.  As the court in *Worthington* explained, where a judgment is based on a settlement, "it would be improper to go beyond what the parties expressly agreed to settle and argue there could have been a judgment based on fraudulent actions if the case had gone to trial."  (*Id.* at p. 282, italics omitted.)  However, the judgment in *Worthington*, as in this case, "was not based on partial settlement of [the plaintiffs'] claims," but instead was "a judgment resolving their entire dispute."  (*Ibid.*)  In the case of a settlement, as in *Yergan*, the settlement sets the boundaries of the judgment; here, as in *Worthington*, there is no settlement or stipulation excluding fraud as one of the grounds for the judgment.

18

Where fraud is not excluded as a possible basis for the judgment, the Program (like the Fund) "calls upon the [administrator] and the trial court to examine the adjudicated facts." (*Worthington*, *supra*, 208 Cal.App.4th at p. 282.) Indeed, the *Worthington* court identified in the Program the very same fact-finding features contained in the Fund's statutory framework—i.e., the inclusion of "'"[a] detailed narrative statement of the facts in explanation of the allegations of the complaint upon which the underlying judgment is based,"'" the claimants' "burden of proving" they meet the statutory requirements, and the superior court's review of the Secretary's denial of relief in an "'evidentiary hearing.'" (*Id.* at pp. 282–283; accord, *Doyle*, *supra*, 30 Cal.App.4th at p. 898; see also § 2282, subd. (c)(5) ["detailed narrative statement of facts"]; §§ 2287, subd. (d) & 2288, subd. (b)(2) ["burden of proving"]; § 2287, subd. (d) ["evidentiary hearing"].)

Here, the superior court reviewed the administrative record, which contained petitioners' underlying bankruptcy filings, to determine whether petitioners "prov[ed] that the cause of action against the corporation . . . was for fraud, misrepresentation, or deceit." (§ 2288, subd. (b)(2).) The court found the "record . . . contain[ed] ample evidence supporting the bankruptcy court's default judgment against SCA for fraud." Specifically, the court relied on the expert declarations submitted to the bankruptcy court opining on "the issue of SCA's fraud" and "the emotional distress the elderly [p]etitioners suffered because of the fraud." It also relied on the many declarations petitioners submitted to the bankruptcy court in which they "explained the fraud and the suffering that resulted from it." Having reviewed the administrative record, we conclude the superior court's

19

factual findings are supported by substantial evidence, and the Secretary does not contend otherwise.

Finally, our conclusion that the statute encompasses petitioners' requests for relief from the Fund is consistent with the duty to "liberally construe remedial statutes in favor of their protective purpose." (*Pineda*, *supra*, 51 Cal.4th at p. 532; see also *Worthington*, *supra*, 208 Cal.App.4th at p. 278 [when interpreting remedial statutes, "'[r]elief will be granted unless clearly forbidden by statute'"].) As set forth above, after the Fund had been in place for about a decade, the Legislature revamped the statutory framework over concerns that the Fund was underutilized and that corporate fraud victims faced delays and obstacles in obtaining relief.[7] Granting relief to petitioners, who have been adjudicated victims of corporate fraud by a court of competent jurisdiction, aligns with legislative intent.

---

[7] The catalyst for the 2012 legislation was the delay SCA's fraud victims faced in receiving compensation from the Fund. (See Sen. Banking & Fin. Inst. Com., Analysis of Sen. Bill No. 1058 (2011–2012 Reg. Sess.) Apr. 11, 2012 ["This bill is based on an article authored by Sacramento Bee columnist Dan Morain on October 9, 2011, profiling the challenges faced by the approximately 500 victims of a corporate fraud perpetrated by James Walker and his now-defunct [SCA]. In his article, Morain detailed the nearly 18-month struggle of victims scammed by James Walker and [SCA] to obtain compensation from the Secretary of State's Office through the Victims of Corporate Fraud Compensation Fund"].)

D.   *The Superior Court's Order Directing Payment from the Fund Must Be Corrected To Specify the Amount Awarded to Each Petitioner*

The Secretary alternatively argues we must reverse and remand the matter for the superior court to specify the amount owed to each petitioner from the Fund.  We agree.

Under section 2289, "the liability of the [F]und shall not exceed fifty thousand dollars ($50,000) for any one claimant per single judgment finding fraud, misrepresentation, or deceit, made with the intent to defraud."  (§ 2289, subd. (a).)  "When multiple claimants are involved in a corporate fraud, or in misrepresentation or deceit by a corporation or its agents, resulting in a judgment meeting the requirements of [s]ection 2282, each claimant may seek recovery from the [F]und individually."  (*Id.*, subd. (c).)  "Claimants who are spouses, registered domestic partners, or persons other than natural persons, that have obtained an eligible final judgment shall be considered one claimant."  (*Id.*, subd. (d).)

The superior court's order "direct[s] the Secretary to compensate [p]etitioners from the Fund based on the default judgment in the [bankruptcy case]."  This order is ambiguous.  First, the bankruptcy court's judgment awarded each petitioner an amount that exceeded the $50,000 maximum payment authorized under the Fund statute.  Second, in some instances, petitioners sought compensation on behalf of someone else or alongside a spouse, who is listed as a separate petitioner.  The Fund restricts payment to $50,000 for any one claimant per single judgment (§ 2289, subd. (a)) and counts claimants who are spouses as one claimant (*id.*, subd. (d)).  Accordingly, we reverse

21

and remand for the superior court to specify the amount the Secretary shall pay each petitioner from the Fund.[8]

## DISPOSITION

The order directing payment from the Fund is reversed and remanded to the superior court to specify the amount the Secretary shall pay each petitioner. In all other respects, the judgment is affirmed. The parties are to bear their own costs on appeal.


PULOS, J.[*]

We concur:


MARTINEZ, P. J.          STONE, J.

---

[8] Section 2282, subdivision (a), allows compensation from the Fund "for the amount unpaid on the judgment that represents the awarded actual and direct loss, any awarded compensatory damages, and awarded costs to the claimant in the final judgment, excluding punitive damages." The Secretary does not argue that petitioners' damages—a blend of economic-loss and emotional-distress damages—do not qualify under the statute.

[*] Judge of the San Diego County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.